UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL LOODEEN,

       Plaintiff,

                                 Case No. 1:06-cv-848

v.                                 Hon. Hugh W. Brenneman, Jr.

CONSUMERS ENERGY COMPANY,

       Defendant.

_____/

## OPINION

Plaintiff Paul Loodeen (Loodeen) brought this action against defendant Consumers Energy Company (Consumers Energy), alleging that Consumers Energy's failure to pay for his time spent attending college classes violates the provisions of the Fair Labors Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201-219. This matter is before the court on the parties' cross-motions for summary judgment (docket nos. 26 and 31).

       **II.**      **Background**

Loodeen applied for a "CES Intern" position at Consumers Energy through an "on-line" application process on February 11, 2004. CES on-line application (attached to defendant's brief as Exh. 5). The on-line application for the CES Intern position included the following question, "Are you willing to commit to completing your CES Educational Certificate within two years of being hired at Consumers?" Paul Loodeen Deposition at 55-57 (attached to plaintiff's brief as Exh. D); CES on-line application. Loodeen answered "yes" to this question. *Id.*; Plaintiff's Answers to Defendant's First Set of Admissions at ¶ 1 (attached to defendant's reply as Exh. 12). Dirk Dunham interviewed plaintiff for the CES Intern position on February 25, 2004. *See* Dirk

1

Dunham Affidavit (attached to defendant's brief as Exh. 4).  At that time, Dunham stated that the requirements for the CES Certificate were "discussed thoroughly."  Dunham Aff. at ¶ 17.  During the interview, Loodeen agreed to commit to obtaining the necessary classes for the CES Certificate.  *Id.* at ¶ 12.  Irhad Sharief also interviewed Loodeen.  Irhad Sharief Deposition at 34 (attached to defendant's brief as Exh. 3).  Sharief did not remember Loodeen's interview, but testified that the CES certificate is discussed "in every interview with the candidates." *Id.*  Loodeen admitted "that based on the information at the time of the interview, he agreed he was willing to pursue the CES certification as explained to him by Irshad Sharief."  First Set of Admissions at ¶ 2.  Loodeen testified that when he asked "what exactly [the CES certificate] entails, Sharief told him "well, you've got a degree, so don't worry."  Loodeen Dep. at 58-59.  At the time of the interview, Loodeen did not explain to Dunham and Sharief that he had other commitments that could affect his potential employment at Consumers Energy, i.e., that he would be working about 30 hours a week as hockey coach and that he would continue working about 8 hours a week at another job.  *Id.* at 11-13, 17-21, 59.

      Plaintiff was hired as a "CES Intern" on March 22, 2004.  Loodeen Dep. at 13.  The position of CES Intern was open to "outside hire" rather than internal candidates at Consumers Energy.  *See* Hiring/progression guidelines matrix ("the guidelines") (attached to plaintiff's brief as Exh. B).  The guidelines for the CES Intern position were: "One or more semester hours completed toward CES Certificate;" "Willing to actively pursue CES educational requirements & to complete at least 24 related credits within one year of hire; and, "Complete Memo of Understanding."  *Id.*  This position was one of "[r]estricted availability," which required "special approval of Executive Managers of Electric & Gas Operations."  *Id.*

2

The guidelines included three positions above CES Intern, specifically, Distribution Assistant I, II and III. *Id.* The Distribution Assistant positions required additional education and a commitment to obtain a CES certificate. Distribution Assistant I required "12-35 (strongly recommended 24-35) related semester hours completed toward CES Certificate," the willingness "to actively pursue CES educational requirements & to complete Certificate within 24 months," and completion of a Memo of Understanding. *Id.* Distribution Assistant II required 36-41 related semester hours toward the CES Certificate and the willingness to actively pursue the CES educational requirements and complete the certificate within 12 months. *Id.* Finally, Distribution Assistant III position required 42 or more related hours completed toward the certificate, and the willingness to actively pursue the CES Certificate and complete the certificate within 6 months. *Id.*

The CES I position included more rigorous requirements as follows:

CES Certificate educational requirements completed. (<u>NOTE</u>: This is not a guaranteed "time in grade" promotion.")

Some design experience (1 year equivalent to DA) preferred.

Completed skills verification checklist for a CES I.

*Id.* The guidelines also include three additional levels of CES, i.e., CES II, CES III and "Senior CES." *Id.* As a CES Intern, Loodeen was paid at a rate of $13.00 per hour. *See* Wage History (attached to defendant's brief as Exh. 11). A Senior CES can make in excess of $31.00 per hour. Mary D. Bondarenko Affidavit at ¶ 14 (attached to defendant's brief as Exh. 1.

Loodeen satisfied the Memorandum of Understanding requirement, having executed a "Customer Energy Specialist Educational Requirements and Memorandum of Understanding" on April 13, 2004, which provided as follows:

3

> The Customer Service Specialist (CES) role is the primary company representative to customers for the construction, maintenance, and relocation of distribution facilities. Employees in this role are required to have a wide range of skills, knowledge and expertise in technical areas, business, customer relations and marketing.
>
> Education requirements have been established for entrance into the CES job family. An individual must have 48 credit hours of college-level course work from an accredited institution. The 48 credits must either (1) meet the CES certificate requirements (25 technical, 14 business, 9 communication), or (2) 36 of the 48 credits must be in a technical area. *See* the complete CES Job Family description for detailed information on educational requirements.
>
> Consumers Energy needs individuals in the CES role that either meet or are working towards the educational requirements. If an individual does not meet the educational requirement, they must show that they are continuously progressing towards the requirements. If this requirement is not met by May 2006, your employment with the Company may be terminated.
>
> Please sign and date below to acknowledge that all parties have reviewed the educational requirement for the Customer Energy Specialist job family.

*See* Memorandum (attached to plaintiff's brief as Exh. C). Loodeen testified that when he signed the Memorandum of Understanding, he was "probationary" and "essentially a trainee." Loodeen Dep. at 117-18.

Loodeen commenced classwork a few months later. In August 2004, he enrolled in 12 credit hours of the CES required classes at Kalamazoo Valley Community College, consisting of business computer applications, fundamentals of drafting, autoCAD (computer-aided drafting), and basics/mechanical technology. Loodeen's KVCC transcript (attached to defendant's reply as Exh. 13). However, Loodeen was unable to complete some classes due to his coaching commitment, ultimately earning a 3.5 grade in the "basics/mechanical technology" class and completing the semester with a cumulative grade point average of 0.58. *Id.*; Loodeen Dep. at 18, 20, 26.

4

Looden alleges that he became a "full time" Consumers Energy employee in December 2004. Compl. at ¶ 11. This date corresponds with his classification as a Technical Assistant I on December 20, 2004. *See* Wage History (attached to defendant's brief as Exh. 11). At this time, his wages rose from $13.00 per hour to $13.65 per hour. *Id.*

On January 4, 2005, plaintiff underwent a "CES Education Certification Transcript Review." Transcript Review (attached to defendant's brief as Exh. 11). This review indicated that plaintiff needed additional course work (6 or 7 courses for 20 total semester hours) for his CES certificate. *Id.* Plaintiff did not receive credit towards his CES Certificate for six classes taken at Hope College, because he received poor grades (lower than a "C"). *Id.* In order to qualify for a CES certificate, it was recommended that plaintiff take the following courses: speech (one 3-hour class); physics (at least one 3-hour class); CAD (two classes totaling at least 6 hours, with an option of a drafting class); algebra (at least one 3-hour class); and technical elective courses totaling five semester hours. *Id.* On February 28, 2005, Consumers Energy determined that plaintiff needed only five classes (16 credits) for his CES Certificate. Bondarenko Aff. at ¶¶ 6-10. As of July 23, 2007, plaintiff had still not completed the last class requirement (i.e., drafting ) for his CES certificate. *Id.* at ¶ 13.

Loodeen received reimbursement from Consumers Energy for his classes. The amount of reimbursement depended on the grade received in the class (e.g., 90% reimbursement for an "A", 80% for a "B", 70% for a "C", 50% for a "pass/fail", and no reimbursement for a grade below a "C". Loodeen Dep. at 126-27. Loodeen testified that he did not perform any productive work while attending these classes. *Id.* at 114-15.

5

Although Loodeen failed to earn a CES certificate in the agreed-upon time frame (May 26, 2006), he remained employed at Consumers Energy, having received four promotions: Technical Assistance I (December 20, 2004); Distribution Assistant I (May 2, 2005); Distribution Assistant II (May 1, 2006); and Distribution Assistant III (May 21, 2007). *See* Wage History. Over this period, his hourly wage rate rose from $13.00 to $16.94. *Id.*

Loodeen filed his complaint on November 30, 2006, alleging that because the college classes were not voluntary and were directly related to his job, he is entitled to $7,000.00 as compensation for his classroom time, homework time and travel time. Compl. at ¶¶ 16, 19-20. Loodeen estimated that he had spent 96 hours of classroom time, 160 hours of homework time and about 11 hours of travel time, for a total of 267 hours for which he has not been compensated. *Id.* at ¶ 15. He asserts that Consumers Energy violated 29 U.S.C. § 207(a) when it failed to compensate him for this work in excess of 40 hours per week at one and one-half times the regular rate at which he was employed. He seeks compensatory damages, liquidated damages, attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**II.     Summary Judgment standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for

summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.　Discussion

### A.　The FLSA

The issue presented by the parties' cross-motions for summary judgment is whether Consumers Energy is obligated under the FLSA to pay Loodeen overtime compensation (i.e., at "one and one-half times the regular rate at which he was employed") for classroom time, study time and travel time spent on his college classes which he took in pursuit of the CES certificate. The Sixth Circuit has summarized an employer's duty under the FLSA in *Chao v. Tradesmen International, Inc.*, 310 F.3d 904 (2002):

> The FLSA requires employers to pay at least a specified minimum wage for each hour worked, *see* 29 U.S.C. § 206, and overtime compensation for employment in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). Although the term "work" is not defined in the statute, the Act defines "employ" to mean "to suffer or permit to work." *Id.* § 203(g); *see also* 29 C.F.R. § 785.6. The Supreme Court has defined work to include any time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944) (footnote omitted). However, the Portal to Portal Act, which amends the FLSA, modified this judicial construction of hours worked to exclude from compensation activities that are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C.A. § 254(a)(2) (West 1998); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir.1999).

*Tradesmen*, 310 F.3d at 907 (footnote omitted).

### B. Applicability of 29 C.F.R. § 785.27

"Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable. . . However, DOL has promulgated interpretive regulations for defining when employee attendance at 'lectures, meetings, and training programs' is not compensable hours worked." See 29 C.F.R. § 785.27" *Tradesmen*, 310 F.3d at 907. Loodeen relies on Department of Labor interpretive bulletin 29 C.F.R. § 785.27, which provides guidance on when the department will view attendance at training programs as compensable "working time":

> Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
>
> (a) Attendance is outside of the employee's regular working hours;
>
> (b) Attendance is in fact voluntary;
>
> (c) The course, lecture, or meeting is not directly related to the employee's job; and
>
> (d) The employee does not perform any productive work during such attendance.

29 C.F.R. § 785.27. Loodeen argues that the issue before the court is resolved by application of this interpretive bulletin.

Consumers Energy urges the court to disregard 29 C.F.R. § 785.27, because it is an interpretive regulation. *Tradesmen*, 310 F.3d at 907. Published agency interpretations and enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers, [although] these informal interpretations are still entitled to some weight on judicial review." *Martin v. Occupational Safety and Health Review Commission*, 499 U.S. 144, 157 (1991). Such interpretations, which include the Department of Labor Interpretive Bulletins, "provide a practical guide to employers and employees as to how

the office representing the public interest in its enforcement will seek to apply it." *Skidmore v. Swift*, 323 U.S. 134, 138 (1944). As to what deference courts should pay "to the Administrator's conclusions," Justice Jackson, writing for a unanimous court, said:

> "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 139-140.[1] In 29 C.F.R. § 785.2, the Department of Labor acknowledged that the interpretive regulations in this section seek to be persuasive rather than controlling under *Skidmore*:

> The ultimate decisions on interpretations of the act are made by the courts. The Administrator must determine in the first instance the positions he will take in the enforcement of the Act. The regulations in this part seek to inform the public of such positions. It should thus provide a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply it." (*Skidmore v. Swift*, 323 U.S. 134, 138 (1944).)

Thus, a court is not legally bound by the Department of Labor's interpretive bulletins, which "are to be accorded varying degrees of deference." *Myracle v. General Electric Company*, No. 92-6716, 1994 WL 456769 at * 6 (6th Cir. Aug. 23, 1994) (citing cases). It is appropriate for a court to give these bulletins some, but not complete, deference. *Id. See, e.g., Farmer v. Ottawa County*, Nos. 98-2321 and 99-1047, 2000 WL 420698 at *4 (6th Cir. April 13, 2000) ("as a general rule, DOL's interpretive regulations under FLSA constitute a body of experience and informed

---

[1] The interpretive regulations are distinguishable from legislative regulations. "Administrative law scholars usually treat legislative regulations as rules of full legal effect – they create new legal duties binding on the parties and the courts and, therefore, require full notice and comment procedures. Interpretive rules, on the other hand, only clarify existing duties and do not bind; thus, they do not require notice and comment." *Bankers Life and Casualty Company v. United States*, 142 F.3d 973, 978 (7th Cir. 1998).

judgment to which courts may properly resort for guidance"); *Brooks v. Village of Ridgefield Park*, 185 F.3d 1309, 135 (3rd Cir. 1999) ("the level of deference given to an interpretive bulletin is governed by the bulletin's persuasiveness"). *But see, Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1146 (7th Cir. 2001) (noting that an interpretive bulletin "does not have the force of binding law," and "is therefore not entitled to deference, although courts may rely on it as persuasive evidence both of Congress's legislative intent and the Secretary's regulatory intent").

Here, the court concludes that the four-part "working time" test as set forth in § 785.27 is not applicable to Loodeen's employment at Consumers Energy. The college classes at issue in this action are not "employer-sponsored lectures, meetings, and training programs," *see Tradesmen*, 310 F.3d at 907, but regular college classes taken apart from plaintiff's employment, as part of a multi-year attempt to qualify for a new position in the company. This is not a situation in which an employee is required to take a few hours of continuing education or re-certification. *See, e.g., Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 720-22 (2nd Cir. 2001) (applying § 785.27 in suit contesting compensation for attendance at 18.5 hours of continuing education classes for radiologic technologists); *Dade County, Florida v. Alvarez*, 124 F.3d 1380 (11th Cir. 1997) (applying § 785.27 in suit contesting compensation for police officer's off-duty hours spent in physical fitness training). Rather, this is an arrangement in which a college graduate with virtually no technical skills is hired as an intern with the understanding that he will complete additional college courses to become certified for a specific position at the corporation within approximately two years. He was free to select the college and when he would take the classes. The courses were off-site and outside plaintiff's regular working hours. The court agrees with the reasoning in *Bienkowski v. Northeastern University*, 285 F.3d 138, 141 (1st Cir. 2002), expressing

doubt that § 785.27 "was meant to cover the peculiar situation presented here – that is, where the training is not continuing education relating to existing job duties, but instead a pre-condition for employment which the employer tolerantly allows to be satisfied while the employee is working on a probationary basis." Accordingly, the court is not persuaded that § 785.27 is applicable to Loodeen's situation.

### C. The Portal to Portal Act

The resolution of Loodeen's claim hinges upon whether the college class work is considered part of his job under the Portal to Portal Act, which provides in pertinent part as follows:.

(a)   Activities not compensable

Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947--

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . .

29 U.S.C. § 254.

The Supreme Court has explained that pursuant to the Portal to Portal Act, "activities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities

for which the covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). In determining which activities are "principal" and which are "an integral and indispensable part" of such activities, the issue for the court "is not whether the activities in question are uniquely related to the predominant activity of the business, but whether they are performed as part of the regular work of the employees in the ordinary course of business . . . what is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business." *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 400-401 (5th Cir. 1976).

Under *Steiner's* interpretation of the Portal to Portal Act, the work activities must be both integral and indispensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005) ("the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity under *Steiner*"). In this context, "integral" has been defined as "essential to completeness," "organically joined or linked," and "composed of constituent parts making a whole," while "indispensable" has been defined as "necessary." *Gorman v. Consolidated Edison Corporation*, 488 F.3d 586, 592 (2nd Cir. 2007), *pet. for cert. filed* No. 07-1019 (Jan. 30, 2008).[2] Courts have determined that "[s]harpening the knife is integral to carving a carcass; powering up and testing an x-ray machine is integral to taking x-rays; and feeding, training and walking the dog is integral to the work of a K-9 officer." *Id.* (citations omitted). In addition, the courts have identified some acts as "indispensable" but not "integral" to the principal activities performed by the employee. *See, e.g.*, *IBP*, 546 U.S.

---

[2]Defendant reverses these definitions in its brief in support of its motion for summary judgment. See Brief at 10.

at 40-42 [the fact that certain preshift activities are necessary (such as time spent waiting to don the first piece protective gear that marks the beginning of the workday at a factory), does not make such activities "integral and indispensable" under *Steiner*]; *Gorman*, 488 F.3d at 593 (waiting in line at a vehicle entrance for security checks prior to entering nuclear power station to commence work is necessary but not integral to the employee's work at the station); *Aiken*, 190 F.3d at 758 (ordinary commute time of police canine officers which may include time spent disciplining the dog and monitoring a police radio may be necessary but not compensable).

        Given this framework, the court concludes that Loodeen's time spent in college classes is not "integral and indispensable" to his principal activities at Consumers Energy. While Loodeen initially hired in as a CES Intern, he held this position for less than a year. Since December 2004, Loodeen has been continuously employed as a Technical Assistant and Distribution Assistant while taking classes to earn the CES certification. It is undisputed that Loodeen has been compensated for the work performed for Consumers Energy in his employment as a Technical Assistant and Distribution Assistant and that he has received tuition reimbursement for the classes taken to obtain the CES certification.

        Loodeen attempts to demonstrate that the classes were "integral and indispensable" to his "principal activities" as a Technical Assistant and Distribution Assistant by asserting that some of the CES certificate courses (e.g., CAD, physics and mathematics) are "directly related to the day-to-day operations of the CES employee." Plaintiff's Brief at 4. This assertion is based upon the Irshad Sharief's testimony that a "CES" would need certain skills to perform their job, such as CAD, algebra and physics. *Id.* at 46-48. When asked if Loodeen, as a Distribution Assistant II was

13

"doing any CES work, any CES I work," Sharief replied "Yes." *Id.* at 36. However, Sharief did not identify any specific CES work that Loodeen performed.

The fact that Loodeen's employment as a Distribution Assistant II included some unidentified CES work does not establish that the CES required classes were "integral and indispensable" to his "principal activities" as a Distribution Assistant II. Given that Loodeen has performed his past work without completing all of the CES certificate educational requirements, it appears that the CES educational requirements are not indispensable or necessary to perform his job as a Distribution Assistant. If completion of the CES certificate classes were integral and indispensable to performance of Loodeen's past and current work as a CES Intern and Distribution Assistant, then he could not have performed that work.

Loodeen's employment as a CES Intern and Distribution Assistant are either probationary or temporary, requiring him to obtain a CES certificate within a specific time frame.[3] Loodeen's employment status is analogous to that of an apprentice or an employee hired on a probationary status who is working toward certification for a higher level position. In either case, such an employee is entitled to compensation for his time spent performing the "principal activities" of his present employment, but not for time spent as a student training for the higher paying position.

For example, in *Bienkowski*, the employee police officers were hired but required to receive and retain certification as EMTs within one year, a commitment requiring 110 classroom hours and 10 hours of hospital observation, practical exams and written exams, occurring generally outside of regular working hours. *Bienkowski*, 285 F.3d at 139-40. The court found that these

---

[3] Neither party discusses the significance of Loodeen's position as a technical analyst I, which he held from December 2004 through May 2005, after his employment as a CES Intern and before his employment as a Distribution Assistant I.

14

employees performed no productive work for the employer while training as EMTs and that the employer could have simply made the certification a precondition of employment. *Id.* at 141. The court declined to make the employer liable for overtime pay "for the time its employees spend as students, rather than workers, simply because [the employer] has decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent basis." *Id.*  *See also*, *Ballou v. General Electric Company*, 433 F. 2d 109, 112 (1st Cir. 1970) ("it is consistent with the spirit of both the Portal-to-Portal Act and the Fair Labors Standards Act to say that as a matter of law, the principal activity of the apprentices as employees is the work that takes place during their regular 40 hour work-training week and that activity as students pursuing their required courses of study is neither integral nor indispensable to that principal activity"); *Merrill v. Exxon Corporation*, 387 F.Supp. 458 (S.D. Tex. 1974) (plaintiff trainees in a three-year apprentice program which included 108 hours per year of classroom attendance in addition to their normal 40-hour work week at defendant's plants, not entitled to compensation for class time under the Portal to Portal Act).

In short, Consumers Energy did not hire Loodeen to be a student. As the court observed in *Merrill*:

> Plaintiffs' suggestion that classroom time is compensable because attendance is required by the employer completely ignores the Supreme Court requirement that the activity be integral and indispensable with the principal activity of employment. Plaintiffs' suggestion would permit as compensable all hours spent at the explicit or implicit command of the employer. The time spent in the classroom is as much for the benefit of the employees as it is for the employer. Indeed, the employer can realize no present benefit from required classroom attendance because the very nature of the apprenticeship program is the preparation of employees for future employment elevation.
>
> Study is not the principal activity of the employer, nor can it be said that the plaintiffs occupy the status of 'employee' when attending class; rather, they occupy

15

> the status of 'student'. If classroom time away from the job site were compensable on the theory that it is job-related and attendance is required, possibly no limit could be placed on the amount of employer compensation liability . . . The employer is already paying tuition. Should the employer be required to compensate the employees for actual time spent in the classroom, it could conceivably follow that it would be required to compensate for time spent in preparation for the class as well. That is, the employer would have to compensate for time spent studying as well as for time spent in traveling to and from class.

*Merrill*, 387 F.Supp. at 466 fn. 9. Of course, all of that is precisely what plaintiff demands here.

Finally, the court rejects Loudeen's contention that he is entitled to pay under the Portal to Portal Act because the class requirement affects his time at home after work, citing 29 C.F.R. §§ 553.221(c) and (d)[4] which provides in pertinent part that:

> (c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work. For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable. The employees in this example cannot use the time for their personal pursuits.
>
> (d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

This regulation addresses situations in which an employee is not physically present at the employer's premises, but still available and on call to perform work for the employer. *See,*

---

[4] It would appear that 29 C.F.R. § 553.221 is a legislative regulation, having been subject to full notice and comment procedures. *See* 52 FR 2012-01, 1987 WL 153341 (F.R.).

*e.g., Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 611 (6th Cir. 1992) ("on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits"). In determining whether the employer's restrictions are so onerous as to require compensation, the court examines all of the circumstances of the case. *Aiken*, 190 F.3d at 760. "That some of the plaintiff['s] personal activities may have been affected is not enough." *Martin*, 968 F.2d at 611. "[A]n employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Aiken*, 190 F.3d at 760, *quoting Dade County*, 124 F.3d at 1384. In the present case, to the contrary, it was plaintiff's personal activity – his coaching commitment – which precluded his completion of some of his college classes at KVCC, *infra.*

Loodeen agreed to take the college classes as a condition of his employment as a CES Intern. He performed no productive work for Consumers Energy while attending the classes. There is no evidence that Loodeen was "on-call" while attending the classes, traveling to the classes or studying for the classes. Under these circumstances, Loodeen's enrollment in the classes did not "restrict him from effectively using the time for personal pursuits." On the contrary, Loodeen's attendance at the classes was itself a "personal pursuit;" he voluntarily committed himself to taking the classes, and obtained significant personal benefits by increasing his knowledge base and working towards the certification for a higher-paying position.

**V.     Conclusion**

For reasons stated above, defendant's motion for summary judgment (docket no. 26) will be **GRANTED** and plaintiff's motion for summary judgment (document no. 31) will be **DENIED**.  A judgment consistent with this opinion shall be issued forthwith.


Dated:  March 14, 2008                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge